44676, 44677.   ALLSTATE INSURANCE COMPANY v.
ANDERSON et al.; and vice versa.

ARGUED SEPTEMBER 8, 1969—DECIDED MARCH 18, 1970—
REHEARING DENIED APRIL 3, 1970—

*Erwin, Epting, Gibson & Chilivis, Eugene A. Epting,* for appellant.

*Joseph J. Gaines, William T. Gerard,* for appellee.

DEEN, Judge. ■ The jurisdiction of the juvenile courts of this State extends only to minors domiciled in the county where the court is located. *Hampton v. Stevenson,* 210 Ga. 87 (1) (78 SE2d 32); *Ingle v. Rubenstein,* 112 Ga. App. 767, 768 (146 SE2d 367); *Whitman v. State,* 96 Ga. App. 730 (1) (101 SE2d 621). The suspension of the minor's driving license by the Juvenile court Judge of Clarke County was void, the insured and her son being residents of Oconee County. However, although the suspension was void, the license was *as a matter of fact* suspended, there was no appeal from the judgment, it was complied with, and therefore the statement in the application for insurance that no license or permit to drive had been suspended was in fact inaccurate.

■ Nevertheless, if the insured's position is correct the judgment in her favor should be sustained. It is obvious from the application itself that the insurance agent was given and wrote down the pertinent data about the son's collision, which collision

was the reason for the juvenile court proceeding referred to above.

As succinctly stated in *Reserve Life Ins. Co. v. Bearden,* 96 Ga. App. 549 (1) (101 SE2d 120), even though the application is attached to and a part of the policy, and even though there is a material misrepresentation therein such as would be sufficient to avoid the policy under present *Code Ann.* § 56-2409 (2) and (3), and even though there is a limitation on the authority of the agent *in the policy* to waive any provisions of either, unless there is a limitation on the authority of the agent *in the application itself* sufficient to put the proposed insured on notice of the limitation on the authority of the agent, the general rule applies that the knowledge of the agent is the knowledge of the principal. The principal, to whom is imputed the actual knowledge of the agent, is then barred from the otherwise valid defense of misrepresentation. "Where, under such conditions . . . not involving actual fraud [i.e. collusion between agent and insured], an insured makes a false statement on an application for insurance of which the agent of the insurance company has actual knowledge, this knowledge is imputed to the insurer, who is thereafter estopped from urging this defense." Id., p. 551 and cit. This was specifically affirmed on certiorari in *Reserve Life Ins. Co. of Dallas v. Bearden,* 213 Ga. 904 (102 SE2d 494) with the statement: "[T]he ruling by the court, as set out in the first headnote and the corresponding division of the opinion and upon which error is assigned, is supported by and in harmony with the prior decisions of this court, viz., *Mechanics & Traders Ins. Co. v. Mutual Real Estate &c. Assn.,* 98 Ga. 262 (25 SE 457) ; *German-American Mutual Life Assn. v. Farley,* 102 Ga. 720 (1) (29 SE 615) ; *Johnson v. Aetna Ins. Co.,* 123 Ga. 404 (51 SE 339, 107 ASR 92) ; *Metropolitan Life Ins. Co. v. Hale,* 177 Ga. 632 (170 SE 875) ; *John Hancock Mutual Life Ins. Co. v. Yates,* 182 Ga. 213 (185 SE 268)."

It thus appears that if an *insured makes a false statement* on an application for insurance *of which the agent of the insurance company has actual knowledge,* this knowledge is imputed to the insurer, who is thereafter estopped from urging this defense. *Johnson v. Aetna Ins. Co.,* 123 Ga. 404 (2), supra; *National Life*

&c. Ins. Co. of Tenn. v. Sneed, 40 Ga. App. 131 (149 SE 68);
Ocean Accident &c. Corp. v. Howell, 46 Ga. App. 69 (166 SE
678); John Hancock Mut. Life Ins. Co. v. Yates, 50 Ga. App.
713 (179 SE 239); Rhodes v. Mutual Benefit Health &c. Assn.,
56 Ga. App. 728 (194 SE 33); Reserve Life Ins. Co. v. Bearden,
96 Ga. App. 549, supra.

Although a limitation on the authority of the agent to waive
the provisions of the insurance contract, when it appears on the
face of the application, makes any effort of the agent to waive
a provision ineffective, there is no limitation of authority on
the application in this case. New York Life Ins. Co. v. Patten,
151 Ga. 185 (106 SE 184); Reserve Life Ins. Co. v. Bearden, 96
Ga. App. 549, supra. The chief reason for the majority rule
that an insurer cannot rely upon the falsity of answers inserted
in an application for insurance by its own agent in response to
questions correctly answered by the insured, is the protection of
the insured who has acted in good faith and answered the in-
quiries correctly. The insurer, to protect itself, need only to
select competent and trustworthy agents. The company which
makes it possible in the first instance for the agent to perpetrate
a fraud should suffer, rather than the other innocent party to
the contract. See 17 Encyclopedia of Georgia Law 679, § 370.

In cases involving applications where there is no limitation
of authority of the agent as well as cases where there is no
application, these two types must be treated differently from the
type cases where there is a limitation of authority of the agent
contained in the application. In one type the applicant and
prospective insured has no notice from the insurance company
of this act of placing a limitation on the agent and in the other
type case the applicant is put on notice that he is dealing with
a limited agent. This court has recognized the difference in some
cases and has ignored the difference in others. McLemore v.
Life Ins. Co. of Ga., 117 Ga. App. 155 (1) (159 SE2d 480)
states: "A life insurance company, by an express provision in
the application for insurance, may define and limit the power
of a mere soliciting agent; and one dealing with such agent can-
not set up a waiver which he knew the agent had no power to
make." Beale v. Life & Cas. Ins. Co. of Tenn., 113 Ga. App.

506 (148 SE2d 474): "In view of this express limitation on the authority of the agent contained in the application for insurance, the knowledge of its agent would not be imputable to the defendant insurance company and would not constitute a waiver by or estoppel against the insurer of the defense of material misrepresentation." These particular-type cases recognize written limitations of authority in the application and generally follow the rule in *New York Life Ins. Co. v. Patten*, 151 Ga. 185 (106 SE 183): "[I]n view of the express limitations upon the power of the soliciting agent who received the application and who made manual delivery of the policy, the knowledge of such agent is not imputable to the insurer." In the other type cases where there is no notice of a limitation of authority to the applicant, the correct rule is as enunciated by the Supreme Court in *Metropolitan Life Ins. Co. v. Hale*, 177 Ga. 632, supra. The question involved in *Hale* is: "[W]ill the company, by virtue of having issued the policy *with such knowledge on the part of its agents* or physician or both, be deemed to have waived such condition or be estopped to claim a forfeiture on account of the breach thereof?" (Emphasis supplied). The court answered this question in the *affirmative* citing *Johnson v. Aetna Ins. Co.*, 123 Ga. 404 (2) (51 SE 339): " 'Limitations in an insurance policy upon the authority of the agent of the company to waive the conditions of the contract of insurance are to be treated as referring to waivers made subsequently to the issuance of the policy.' "

The case of *State Farm Mut. Auto. Ins. Co. v. Anderson*, 107 Ga. App. 348 (130 SE2d 144), involves an application for insurance that did not contain a limitation of the agent's authority but yet the harsh rule which heretofore had been reserved for the cases where the applicant had been put on notice of a limitation of authority was involked. *Brannon v. Allstate Ins. Co.*, 120 Ga. App. 467 (171 SE2d 319) involved the same situation as in *State Farm Mut. Auto. Ins. Co. v. Anderson*, supra. In *Brannon* there was a false answer in the application but the applicant contended under oath that she disclosed all the true facts to the agent which under *Hale*, supra, creates a jury question as to whether the jury would want to believe the applicant

or the agent. Yet summary judgment was granted for the insurer without affording the applicant an opportunity to show he had no notice of any agent's limitation and to introduce evidence before a jury that he disclosed all facts to the agent.

In the recent case of *Lucas v. Continental Cas. Co.*, 120 Ga. App. 457 (170 SE2d 856), (cert. den.), Judge Eberhardt pointed out in an excellent concurring opinion that we are bound to follow *Hale*, supra, in cases where there is no notice of a limitation of authority to the applicant, and follow *Patten*, supra, where there are cases involving limitation of authority. Where there are cases involving limitation of authority in the application then this court must construe the wording of the limitation of authority as to whether there is a limited limitation of authority or whether there is unlimited limitation of authority. Both of these latter cases are Supreme Court cases written in answer to certified questions from our court and any of the other cited cases to the contrary must yield to these Supreme Court cases.

3. The counterclaim of the Andersons alleges that a demand for payment of certain losses by Charles Anderson was made on January 27, 1969. The record before us shows that the declaratory judgment action was initiated on March 11, 1969, well before the expiration of 60 days from demand, which is a prerequisite for any action for attorney's fees for a bad-faith refusal to pay under *Code Ann.* § 56-1206 (Ga. L. 1960, pp. 289, 502; 1962, p. 712). See in this connection *Reliance Ins. Co. v. Brooks Lumber Co.*, 101 Ga. App. 620 (115 SE2d 271). The sufficiency of the action by Allstate as presenting a justiciable controversy and as stating a claim for relief has not been questioned. The trial judge was authorized to conclude that there was a reasonable ground for contesting the claim so as to remove the issue from the case. *Dependable Ins. Co. v. Gibbs*, 218 Ga. 305 (8) (127 SE2d 454); *Independent Life &c. Ins. Co. v. Thornton*, 102 Ga. App. 285 (6) (115 SE2d 835).

*Judgment reversed and remanded for further proceedings in accordance with the second division of this opinion. Bell, C. J., Jordan, P. J., Pannell and Quillian, JJ., concur. Hall, P. J., and Eberhardt, J., concur specially. Whitman, J., concurs in Division 3. Evans, J., concurs in Division 2. Whitman and Evans, JJ., dissent to Division 1.*

BELL, Chief Judge, concurring. Judge Deen presents, I think, a scholarly discussion in this case, in *Chester v. State Farm Mut. Auto. Ins. Co.*, 121 Ga. App. 599, and·in his dissent in *Prudential Ins. Co. v. Perry*, 121 Ga. App., post. He offers the court an excellent opportunity to rectify, partially at least, a court-made rule of law which oftentimes is harshly unjust to the public. For this writer's views on the subject generally see the special concurrence in *Saddler v. Cotton States Life &c. Ins. Co.*, 101 Ga. App. 866, 871 (115· SE2d 398). For my part, I would be willing to overrule cases of this court which some of the judges see as precedents precluding adoption of Judge Deen's views. These include my own case of *State Farm Mut. Auto. Ins. Co. v. Anderson*, 107 Ga. App. 348 (130 SE2d 144). The majority of my colleagues, however, are unwilling to do so. Nevertheless, I consider Judge Deen's distinction a valid one and feel that it should be adopted.

HALL, Presiding Judge, concurring specially. I concur in Divisions 1 and 3 of the majority opinion. The appellee's contention that a void judgment "is a mere nullity and may be so held in any court when it becomes material to the interests of the parties to consider it" is sound law. Her contention that the failure to appeal a void judgment does nothing to change the legal effect of the judgment is also sound law. However in my opinion, the question of the jurisdiction of the juvenile court is irrelevant as to whether the information sought by the application was material to the risk and whether the applicant gave a false answer. The application contained the following question which shows on its face that it is material to the issuance of an automobile liability policy: "With respect to any applicant or any member of his household, . . . has any license or permit to drive any automobile been revoked, suspended or refused?" The applicant answered "No."

The appellee contends that the question calls for a legal opinion. I disagree; it calls for an answer of fact. The true factual answer should have been that her son's driver's license had been suspended. The· insurer wasn't asking for a legal opinion but an answer of fact.

. To·say that the question calls for a legal opinion would mean

that the question should be construed in the following manner: Considering the statutes of Georgia, the ordinances of its cities, the laws of Congress, the jurisdiction of all courts, the case law of Georgia and the Federal courts interpreting these laws and the Constitution of Georgia and of the United States, has the applicant or any member of his household had any license or permit to drive any automobile revoked, suspended or refused in such manner that the same is not subject to legal attack? What if the situation here were reversed? Suppose an applicant gave a truthful answer in fact but because of the law the answer was legally false. A leading authority in this field has said that construction of matters in the application "should normally be considered in terms of their ordinary meaning in everyday parlance and not in their technical, legal sense." 13 Appleman, Insurance Law and Practice Supp. 209, § 7586. See also Preferred Risk Mut. Ins. Co. v. Anderson, 277 Minn. 342 (152 NW2d 476) and Marks v. Continental Cas. Co., 19 Utah 2d 119 (427 P2d 387). The law is a two-edged sword which should cut both ways whether it is being applied to an insured or an insurer.

The question was written for and to be answered by laymen —not their attorneys. The issue should be viewed in a realistic manner. This approach finds support in the classical distinction between a misrepresentation of law and a misrepresentation of fact as stated by Jessel, Master of the Rolls, in Eaglesfield v. Marquis of Londonderry, 4 Ch. Div. 693 (1876): "A misrepresentation of law is this: when you state the facts, and state a conclusion of law, so as to distinguish between facts and law. The man who knows the facts is taken to know the law; but when you state that as a fact which no doubt involves, as most facts do, a conclusion of law, that is still a statement of fact and not a statement of law. Suppose a man is asked by a tradesman whether he can give credit to a lady, and the answer is 'You may, she is a single woman of large fortune.' It turns out that the man who gave the answer knew that the lady had gone through the ceremony of marriage with a man who was believed to be a married man, and that she had been advised that the ceremony was null and void, though it has not been

declared so by any court, and it afterwards turned out they were all mistaken, that the first marriage of the man was void, so that the lady was married. He does not tell the tradesman all these facts, but states that she is single. This is a statement of fact. If he had told him the whole story, and all the facts, and said, 'Now, you see the lady is single,' that would have been a misrepresentation of law. But the single fact he states, that the lady is unmarried, is a statement of fact, neither more nor less; and it is not the less a statement of fact, that in order to arrive at it you must know more or less of the law." See also *Christopher v. Whitmire*, 199 Ga. 280, 283 (34 SE2d 100).

I do not concur in Division 2 of the majority opinion for the simple reason that there has been no ruling by the trial court on this issue. In fact no evidence has yet been introduced as to what the parties may or may not testify in regard to this question. The rulings of the trial judge were based solely on the point covered in Divisions 1 and 3 of the majority opinion.

EBERHARDT, Judge, concurring specially. I join in Judge Hall's special concurrence. I must say, however, that when a ruling is made by the trial court that would raise the question dealt with in Division 2 of the majority opinion I would have to agree that the majority has reached the correct result. See my concurring opinion in *Lucas v. Continental Cas. Co.*, 120 Ga. App. 457, 460 (170 SE2d 856) and in *Chester v. State Farm Mut. Auto. Ins. Co.*, 121 Ga. App. 599.

WHITMAN, Judge, dissenting. 1. The jurisdiction of a juvenile court, being civil in nature, extends only to those minors who are residents of the county. *Hampton v. Stevenson*, 210 Ga. 87 (1) (78 SE2d 32); *Ingle v. Rubenstein*, 112 Ga. App. 767, 768 (146 SE2d 367); *Whitman v. State*, 96 Ga. App. 730 (1) (101 SE2d 621). If the judicial power of a court to determine a cause is defined so as to specify, among other things, that it can adjudicate only with regard to persons residing within a particular geographical area, then the residential requirement becomes as much a part of its subject matter jurisdiction as the type of causes it is authorized to entertain. Thus where, as here, a juvenile court had in the past entered an order suspending a minor's driver's license for 60 days, but the minor was a

resident of a different county, the order and suspension was null, void and of no effect. It is true that the minor in this case abided the suspension of his driver's license, and the suspension period has long since passed. But that fact does not serve to validate the suspension. One may not confer jurisdiction of the subject matter upon a court where it is without such jurisdiction as a matter of law (*Chapman v. Silver & Brother*, 18 Ga. App. 476 (2) (89 SE 590)), and any judgment entered where there is a lack of such jurisdiction is absolutely void. *Code* § 110-709. A void judgment may be impeached in any action, direct or collateral. *Jowers & Son v. Kirkpatrick Hardware Co.*, 21 Ga. App. 751 (2) (94 SE 1044); *Code Ann.* § 81A-160 (a) (Ga. L. 1966, pp. 609, 662; 1967, pp. 226, 239).

The suspension in this case was void and of no dignity as we all apparently agree. It was of no more legal effect than if it had been "suspended" by a police officer or a next door neighbor.

Therefore, I must take issue with the basic premise of the first division of the majority opinion which is, as there stated: "[A]lthough the suspension was void, the license was *as a matter of fact* suspended, there was no appeal from the judgment, it was complied with, and therefore the statement in the application for insurance that no license or permit to drive had been suspended was in fact inaccurate." Does not this premise conflict with itself on its face?

If the suspension was void (and no appeal need be taken from a void judgment) and of no legal dignity, how then, when the time comes to apply the law to the facts, can the void suspension be given such legal recognition as to say it "exists factually". and that "the license was *as a matter of fact* suspended" with the legal consequence of voiding the policy of insurance?

The trial judge did not err in finding that the order of the Clarke County Juvenile Court suspending the driver's license of Michael Anderson was void and in finding for the defendants in the action for declaratory judgment.

I am authorized to state that Judge Evans concurs in this dissent.